CHARLES D. DOYLE, petitioner-respondent,

*v.*

ELIZABETH W. DOYLE, defendant-appellant.

[Submitted October 27th, 1933. Decided February 2d, 1934.]

*Messrs. Egner & Beatty,* for the appellant.

*Mr. Richard Doherty,* for the respondent.

The opinion of the court was delivered by

WELLS, J.

The petition for a divorce in this case was filed by Charles D. Doyle against his wife, Elizabeth W. Doyle, on the ground of adultery. There was a decree granting the prayer of the petition, from which the wife appeals.

The case is purely one of fact and the only argument made for a reversal of the decree concerns the sufficiency of the proof of adultery.

The parties were living in a state of separation for about a year before the suit was brought. This separation was of the wife's choosing and without any legal reason and against the husband's wishes, who repeatedly sought to bring about a reconciliation with his wife, but without success.

Within a month or two after the wife left her husband she met the co-respondent, Arthur M. Johnson, while she was demonstrating Beech Nut coffee in a store in Newark. She gave him a cup of coffee and he took her home in his automo-

bile and within a period of two weeks he had stopped to see her again, had taken her to a party and she had gone out with him on an all night fishing trip on Barnegat bay. The other members of this party were her sister (who was not living with her husband) and another man. They left Newark after midnight and did not return until the next afternoon or evening.

Mrs. LeClair, with whom she boarded, said Mrs. Doyle admitted sleeping with Johnson that night. Johnson was living at the time under the same roof with his wife but all marital relations between them had ceased and, as the advisory master aptly put it, "when the defendant met Johnson she was a wife who was dissatisfied with her husband and Johnson was a husband who was dissatisfied with his wife."

The petition charged commission of adultery at various times from the latter part of the year 1928 to the time of the filing of the petition in the month of August, 1929, in Newark, Neptune City, Scranton and Clark Summit, Pennsylvania.

The offenses which the advisory master found had been proved, occurred at the home of Mr. and Mrs. Emil LeClair at Newark, New Jersey. Mrs. Doyle had boarded there from December, 1928, to June 20th, 1929.

Mr. and Mrs. LeClair and Walter LeClair testified that Johnson called upon Mrs. Doyle several times a week; that they indulged, more or less openly, in hugging, kissing and other familiarities; that Mrs. Doyle frequently entertained Johnson in her bedroom alone and on many of these occasions was only partially dressed. Mrs. LeClair testified that Mrs. Doyle admitted to her that she and Johnson indulged in sexual intercourse and expressed a fear that she was pregnant by Johnson and took medicine to free herself of that condition.

On the whole the testimony of Mr. and Mrs. LeClair, if believed, clearly establishes the charges of adultery.

The advisory master hesitated to accept all of the testimony of the LeClairs, but did accept that part of it which was corroborated by other facts and circumstances and the testimony

of other witnesses and the admissions of Mrs. Doyle and Johnson.

That Mr. and Mrs. LeClair were not witnesses of the highest type is apparent from their records. In the first place, Mr. and Mrs. LeClair admitted that they consented to the use of their home as a meeting place for Mrs. Doyle and Mr. Johnson with the full knowledge that each was married to someone else. In addition, Mrs. LeClair admitted that she had lived for many years with Mr. LeClair before their marriage and before he was divorced from his first wife, and that she had signed a confession to a charge of shoplifting. Mr. LeClair admitted pleading guilty to a charge of grand larceny. Mrs. Doyle knew all of this but continued to live with the LeClairs. Manifestly, testimony from such sources must be scrutinized with great care and caution before it is accepted in whole or in part.

However, there is so much corroboration in the testimony of others that after a careful examination of all the evidence, we have reached the conclusion that the decree was justified.

In addition to admitting spending the night with Mr. Johnson in a two-couple combination on a boat on Barnegat bay, Mrs. Doyle admitted that Johnson took her and Mr. and Mrs. LeClair on an all night trip to Scranton, Pennsylvania. There was testimony from relatives of the LeClairs, whom they visited, that Mrs. Doyle, while in their home, sat on Johnson's lap and that they indulged in other exhibitions of affection toward each other; that he told obscene stories and exhibited an obscene device of male and female figures, in the presence of Mrs. Doyle. There was testimony that Johnson took Mr. and Mrs. LeClair and Mrs. Doyle in his automobile to the home of his friends, the Hetzels, in Neptune City, where, with some other convivial friends, an all night party was held at which intoxicating liquors freely flowed and the sleeping arrangements were, to say the least, questionable; that on another occasion at the Hetzel home, Mrs. Johnson suddenly appeared on the scene in search of her husband, whom she claimed she had reason to suspect. Looking through the window from the front porch, Mrs. Johnson

saw her husband playing cards with Mrs. Doyle and Mr. and Mrs. Hetzel and rang the doorbell and on Mr. Hetzel saying, "good evening, Mrs. Johnson," Mrs. Doyle hurriedly arose from her seat and disappeared into the bathroom, where she remained fifteen or twenty minutes and until Mrs. Johnson had departed with her husband who she insisted should leave with her.

Mrs. Doyle admitted that she knew that Mrs. Johnson was the woman who so suddenly appeared at the Hetzel home, and that she heard Mrs. Johnson demanding to know who and where the woman was who was with her husband, and that she heard all the conversation from her position in the bathroom and knew that it referred to her. She gave as an excuse for not coming out and facing Mrs. Johnson that Mrs. Johnson was so excited that she (Mrs. Doyle) didn't feel that it was advisable for her to come out and cause more excitement, knowing that it might be harmful to Mrs. Hetzel, who was more or less of an invalid. Mrs. Doyle said that Mr. Johnson had not intended to spend that night at Hetzel's and that he just dropped in, and yet his satchel was upstairs and he went up to pack it while his wife waited for him.

Mrs. Johnson testified that she found in her husband's pocketbook a photograph of Mrs. Doyle. There is also testimony that Mr. Johnson's photograph occupied a prominent place on Mrs. Doyle's bureau and that Mr. Johnson's Packard sedan was frequently parked in front of the LeClair home during the period of time Mrs. Doyle boarded there.

Mrs. Doyle admitted that Johnson frequently called at the LeClair home but said he came to see the LeClairs, and was always entertained in the sitting-room with the LeClairs or someone else present.

It would serve no useful purpose to continue with the recital of the testimony taken before the master tending to corroborate the evidence of the LeClairs in establishing the guilt of Mrs. Doyle and Johnson.

Our examination of the proofs convinces us that the charge was sustained by the great preponderance of the evidence and that the decree was a proper one. It is accordingly affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.

*For reversal*—None.